UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-MJ-03324-Torres

UNITED STATES OF AMERICA

v.

JAIME SERRANO,

    **Defendant.**
_____/

FILED BY ___dgj___ D.C.

**Aug 6, 2022**

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - mia

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard)?     No

2. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss)?     No

Respectfully submitted,
JUAN ANTONIO GONZALEZ
UNITED STATES ATTORNEY

BY: _____
ABBIE D. WAXMAN
Assistant United States Attorney
Florida Bar No.: 109315
99 Northeast 4th Street, 6th Floor
Miami, Florida 33132-2111
Tel: 305-961-9240
Email: Abbie.Waxman@usdoj.gov

# UNITED STATES DISTRICT COURT
## for the
### Southern District of Florida

| | |
|---|---|
| United States of America<br>v.<br>JAIME SERRANO<br><br>*Defendant(s)* | )<br>)<br>)  Case No. 22-MJ-03324-Torres<br>)<br>)<br>) |

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __August 27, 2019__ in the county of __Miami-Dade__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2261A | Stalking |
| 18 U.S.C. § 924(c) | Discharging a Firearm in Furtherance of a Violent Crime |
| 18 U.S.C. § 924(o) | Conspiracy to Use or Carry a Firearm in Furtherance of a Violent Crime |

This criminal complaint is based on these facts:
SEE ATTACHED AFFIDAVIT.

☑ Continued on the attached sheet.

*Complainant's signature*

Samuel Band, SA FBI    ID #7912
*Printed name and title*

Attested to by the Applicant in accordance with the requirements of Fed.R.Crim.P. 4.1 by __Telephone__

Date: 8/6/2022

*Judge's signature*

City and state:  Miami, Florida      Honorable Edwin G. Torres, Chief U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF AN ARREST WARRANT

Your Affiant, Samuel Band, being duly sworn, deposes and states as follows:

1. I am a Special Agent ("SA") with the Federal Bureau of Investigation ("FBI"), currently assigned to the Violent Crimes and Fugitive Task Force, in the Miami Division. My current duties involve the investigation of a variety of violations of federal offenses, including bank robberies, Hobbs Act robberies, extortion, murder for hire, kidnapping, and other violations of federal law. I have been a SA with the FBI since February 2019 and have been assigned to the Miami Division since that time. Prior to becoming an FBI Special Agent, I was a law enforcement officer in Virginia with the Fairfax County Police Department from 2013 to 2018.

2. This affidavit is submitted in support of a criminal complaint charging defendants Julian Jimenez ("JIMENEZ") and Jaime Serrano ("SERRANO"), with stalking, in violation of 18 U.S.C. § 2261A,[1] discharging a firearm in furtherance of a violent crime, in violation of 18 U.S.C. § 924(c), and conspiracy to use or carry a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(o).

3. The statements contained in this affidavit are based on my personal knowledge, as well as information relayed to me by other law enforcement officials, and information obtained from interviews of individuals who are associates of the known defendant and the victim of the crime. I have not included every fact known to me about this investigation in this affidavit. Rather, I have included only the facts that are sufficient to establish probable cause for the issuance of a criminal complaint against JIMENEZ and SERRANO for the above-described criminal violations.

---

[1] Whoever travels in interstate or foreign commerce…with intent to kill, injure, harass, intimidate, or place under surveillance with intent to kill, injure, harass or intimidate another person, and in the course of or as a result of, such travel or presence engages in conduct that (A) places that person in reasonable fear of death of, or serious bodily injury to that person. *See* 18 U.S.C. § 2261A.

4. On the night of August 27, 2019, the residential surveillance camera located at 10620 SW 118 Avenue, Miami, Florida 33186 captured A.V. (the victim) driving into the garage of his residence when a male approached the vehicle by the rear driver side door and fired multiple rounds into the vehicle at the victim. The victim was shot but survived.

5. The video further depicts the male running away from the shooting eastbound in the residential community towards Southwest 117 Avenue, which leads to a park.

6. The male wore a black short-sleeved hoodie, dark-colored shorts, a white and blue surgical mask, and white and black colored gloves.

7. Law enforcement found a mask and gloves that appeared to be the same mask and gloves worn by the male discarded along the sidewalk along Southwest 117 Avenue between the shooting scene and park. Police also found a firearm inside a trash can also located between the shooting scene and the park. Other items collected from the residential scene included shell casings and projectiles from both the victim's body and his vehicle. Law enforcement completed a ballistic comparison that confirms the firearm found inside the trash can matches the shell casings and projectiles found on scene and within the victim's body.

8. Some items recovered from the scene were submitted for the purpose of forensic laboratory analysis. The surgical mask and both gloves contained a mixture of DNA profiles (meaning more than one person's DNA) in some areas. The inside and outside of the mask and the interior of the right-handed glove contained a male DNA profile suitable for comparison to a known standard. The profiles matched each other. This DNA profile was submitted to Combined DNA Index System (CODIS) without a resulting match.

9. However, on June 26, 2022, law enforcement executed a federal search warrant for, "DNA Samples to Be Obtained By Oral Swabbing from Julian Jimenez."[2] The DNA swabs collected from JIMENEZ were sent to the Miami Dade Police Forensic Lab for comparison to the developed genetic profile obtained from the mask and the gloves left on scene.

10. On July 6, 2022, the Forensic Biology Laboratory report provided the following information: The major male DNA profile previously obtained from the inside of the mask, the outside of the mask, and the inside of the right-hand glove match the DNA profile obtained from the oral standard swabs from JIMENEZ. The frequency with which the evidence DNA profile is expected to be found in an unrelated individual in the population at large is 1 in 14.16 nonillion. Because the rarity of this DNA profile exceeds 1 in 320 billion, it is unreasonable to conclude that an unrelated individual would be the source of the major male DNA profile previously obtained from the evidence items.

11. As part of the investigation, law enforcement located a surveillance camera mounted on the rear of a residence just south of the aforementioned park that points toward the parking lot of the park. At a time stamp approximately four (4) minutes before the shooting, the surveillance footage captured a Sports Utility Vehicle (SUV) pull into the parking lot and back into a parking spot. The video shows an individual exit the SUV from the driver side and walk around the SUV and then re-enter the SUV through the driver side. Approximately two minutes after the shooting, this video depicts another individual, believed to be the male shooter (JIMENEZ), walking southbound on Southwest 117 Avenue towards the SUV. This individual then entered the SUV at which time, it left the parking lot.

---

[2] The application, issuance, and execution of this warrant all occurred in New York.

12. As part of the investigation, law enforcement drove from the park to the north bound toll plaza located nearby. This drive took approximately five (5) minutes. Law enforcement obtained video from this toll Plaza in order to capture the period marking approximately five (5) minutes after the SUV left the park parking lot. The video shows a vehicle matching the shape of the SUV seen in the parking lot video passing through the tolls. The vehicle was a 2018 Nissan Rogue bearing Florida tag 998YFF.

13. This Nissan Rogue was registered to Enterprise Rental Car ("Enterprise"). Law enforcement requested the renter's information from Enterprise, which revealed the renter to be SERRANO. The rental records also documented the phone number used by SERRANO to rent the vehicle. Law enforcement confirmed this phone number belonged to SERRANO on the day of the shooting via a subpoena of the subscriber information associated with this number.

14. Law enforcement interviewed a representative from Enterprise who advised that SERRANO had originally rented a different vehicle, a sedan, but on August 26, 2019 (the day before the shooting), he returned the sedan to Enterprise and replaced it with the Nissan Rogue SUV. SERRANO returned the Nissan Rogue at approximately 6:00 a.m. on the morning after the shooting. The day after the shooting, video surveillance from Enterprise indicates that SERRANO was alone when he returned the vehicle.

15. Law enforcement located an individual who was inside a vehicle parked near the SUV in the park's parking lot on August 27, 2019, around the time of the shooting. This individual indicated he had observed an SUV, which he believed to be a Nissan Rogue, in the parking lot the night of the incident. The witness further described seeing a person wiping down the SUV with a rag. He described this person as a white, possibly Hispanic, male. Biographical data from law

4

enforcement databases and driver's license records indicates that both JIMENEZ and SERRANO are Hispanic males.

16. Law enforcement obtained and executed a search warrant for information related to SERRANO's phone. The results indicate SERRANO's phone utilizing cellular transmission towers on August 21, 2019 (six days prior to the shooting), in the area of the LaGuardia Airport in New York, then later that day in the area of the Miami Airport, in Florida. On August 23, 24, 26 and 27 (the last of these dates being the date of the shooting), SERRANO's phone utilized towers within the vicinity of the victim's business and the victim's residence. This business is approximately 3.6 miles from the residence. SERRANO's phone utilized the nearby cellular towers until approximately 7:01 pm on the night of the shooting. The shooting occurred at approximately 8:13 p.m. SERRANO's phone did not show any activity on the cellular network until after the shooting at 9:01 pm. Records show that once SERRANO's phone picked up service after the shooting, the phone travelled North through the state of Florida away from the shooting scene.

17. Law enforcement determined that on August 20, 2019, JIMENEZ and SERRANO accessed the American Airlines website within 30 minutes of each other and subsequently booked their travel that day. Law enforcement obtained travel records from American Airlines for JIMENEZ's travel that show JIMENEZ traveled from The LaGuardia Airport in New York to Miami International Airport in Florida on August 21, 2019, on American Airlines flight AA1556. JIMENEZ reserved seat 13E on this flight. Law enforcement also learned that the flight manifest showed SERRANO on the same flight sitting in seat 14E. Records indicated JIMENEZ did in fact board the flight and sat in the seat directly in front of SERRANO.

18. There are no records that JIMENEZ or SERRANO declared that they were travelling with a firearm.

19. The phone number provided by American Airlines associated with the ticket purchased by JIMENEZ was searched in the previously sought call detail records of SERRANO prior to, during, and after the date of the shooting. SERRANO's phone records show frequent communication between JIMENEZ and SERRANO up until the night of the incident.[3] Specifically, one communication took place during the 30 minutes between JIMENEZ and SERRANO accessing the American Airlines website. The last communication before the shooting took place on August 27, 2019 (the day of the shooting), then resumes on September 9, 2019.

20. Law enforcement has not found a flight out of Florida for JIMENEZ.[4] "Cellsite" records for SERRANO indicate that he traveled North after returning the rental car eventually arriving in New York on September 10, 2019, in the evening.[5]

21. Law enforcement interviewed JIMENEZ, who initially denied knowing SERRANO even though law enforcement had already determined through family and associates, and other sources, that they did know each other. JIMENEZ stated that he was in South Florida during the relevant time period to "relax" and stayed a hotel the entire time without leaving. He refused to provide the name of the hotel or any documentation substantiating same. Law enforcement confronted JIMENEZ with the airline information indicating that he flew to Miami

---

[3] By the time law enforcement determined JIMENEZ's cellular telephone number, the network carrier did not have "cellsite" or "call detail" records related to same.
[4] JIMENEZ later told law enforcement that he returned to New York by aircraft and provided the names of two airlines as a possibility. Records from one airline does not indicate any flight information for JIMENEZ returning to New York. Records from the second airline are pending.
[5] "Cellsite" mapping is ongoing, and there is no report yet of SERRANO's activities immediately after returning the rental car on August 28, 2019. Existing reports begin analysis on September 9, 2019, which picks up with SERRANO in Georgia.

6

with SERRANO, and then JIMENEZ ceased cooperating with law enforcement, with the exception of complying with allowing a DNA buccal swab pursuant to the aforementioned warrant.

22. Law enforcement spoke with SERRANO, and he also denied knowing JIMENEZ. SERRANO stated that was in South Florida at the time for a close friend's event but did not provide proof of same. When asked if law enforcement could look in his phone to see if there was contact information for JIMENEZ, SERRANO ceased cooperating with law enforcement, with the exception of complying with allowing a DNA buccal swab pursuant to a warrant.

23. Based on my training and experience, as further supported by the foregoing facts, I respectfully submit that probable cause exists to believe that JIMENEZ and SERRANO did commit stalking, in violation of 18 U.S.C. § 2261A, discharging a firearm in furtherance of a violent crime, in violation of 18 U.S.C. § 924(c), and conspiracy to use or carry a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(o).

**FURTHER YOUR AFFIANT SAYETH NAUGHT.**

_____
SPECIAL AGENT SAMUEL BAND
FEDERAL BUREAU OF INVESTIGATION

Attested to in accordance with the requirements of
Federal Rule of Criminal Procedure 4.1 by Telephone this 6th day of August, 2022.

_____
HONORABLE EDWIN G. TORRES
UNITED STATES CHIEF MAGISTRATE JUDGE

7